```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
AMERICAN STOCK TRANSFER &
TRUST COMPANY, LLC,

                Plaintiff,            Memorandum and Order

        v.                            20-CV-1809(KAM)(RLM)

CHRISTOPHER SYKES,

                Defendant.
----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

The plaintiff, American Stock Transfer & Trust Company, LLC ("Plaintiff" or "AST"), initiated this breach of contract action against defendant Christopher Sykes ("Defendant") on April 15, 2020. Defendant failed to appear, and the Clerk of Court entered Defendant's default on July 30, 2020. Plaintiff has filed a motion for a default judgment. (ECF No. 21.) For the reasons herein, Plaintiff's motion for a default judgment is GRANTED.

### Background

I. **Defendant's Failure to Appear**

Plaintiff initiated this action by filing a complaint on April 15, 2020. (ECF No. 1, Complaint.) The summons and complaint were served upon Defendant's mother at Defendant's residence, as allowed by the Federal Rules of Civil Procedure, on April 30, 2020. (ECF No. 8, Summons Returned Executed); *see*

Fed. R. Civ. P. 4(e)(2)(B) ("[A]n individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]").

On June 11, 2020, Magistrate Judge Roanne Mann entered an order to show cause why the case should not be dismissed for lack of subject-matter jurisdiction.  (ECF No. 12, Order to Show Cause.)  Judge Mann noted that while Plaintiff had purportedly invoked the court's diversity jurisdiction, AST was a limited liability company under the laws of New York, meaning it was a citizen of the states of each of its individual members for purposes of diversity jurisdiction.  (*Id.* at 1.)  Thus, more information was required to determine whether complete diversity existed between AST and Defendant, who was alleged to be a citizen of Connecticut.  (*Id.* at 1-2.)  With leave of the court, Plaintiff filed an amended complaint stating that AST's sole member is a Delaware corporation with its principal place of business in New York, making AST a citizen of both Delaware and New York.  (ECF No. 15, Amended Complaint ("Am. Compl."), ¶ 3.)  A new summons and the amended complaint were then served upon Defendant's mother at Defendant's residence on July 1, 2020.  (ECF No. 18, Summons Returned Executed.)

2

Defendant never appeared in this action, and the Clerk of Court entered Defendant's default on July 30, 2020. On August 4, 2020, Plaintiff moved for a default judgment. (ECF No. 21, Motion for Default Judgment; *see* ECF No. 21-8, Memorandum in Support ("Mem.").) The same day, Plaintiff served the motion for a default judgment and supporting papers by mail upon Defendant. (ECF No. 22, Affidavit of Service.) To date, Defendant has not responded.

## II. Facts Alleged Against Defendant

AST is a financial services company headquartered in Brooklyn, New York. AST alleges that Defendant began working as its employee in June 2014. (Am. Compl. ¶ 5.) As part of his employment, AST provided Defendant with a laptop computer, a cell phone, and an identification card for purposes of accessing AST's office. (*Id.* ¶ 6.) Approximately four years after Defendant began working for AST, Defendant and AST entered into an agreement under which AST agreed to pay for 75 percent of Defendant's tuition in connection with an MBA program at New York University, which Defendant would complete between 2018 and 2020. (*Id.* ¶¶ 7-8; *see id.*, Ex. B, Education Assistance Agreement ("Agreement").) The Agreement provided that if Defendant "terminate[d] [his] employment with [AST] without Good Reason . . . or if [AST] terminate[d] [his] employment for Cause . . . prior to [his] completion of the MBA Program, [Defendant]

3

agree[d] to reimburse [AST] in full for payment of the Tuition by no later than one week after the termination of [his] employment." (Agreement ¶ 7.) The Agreement bears the signatures of an AST executive and Defendant. (*Id.* at 3.)

Plaintiff alleges that throughout 2018 and 2019, Defendant missed work on numerous occasions, often without providing advance notice to his supervisor. (*See* Am. Compl. ¶¶ 10-19.) One of the reasons offered by Defendant for his numerous absences was that a close friend and his family were killed during Hurricane Dorian in the Bahamas in September 2019. (*Id.* ¶ 13.) On September 30, 2019, Defendant advised AST that he wished to take a leave of absence as a result of the death of his friend. (*Id.* ¶ 20.) AST directed him to follow the requisite processes for requesting leave under the Family Medical and Leave Act and AST's internal policies. (*Id.*) AST alleges that Defendant never did so, and his request was denied on October 28, 2019. (*Id.*) AST further alleges that it heard nothing further from Defendant after his request on September 30, and so AST sent him a letter on November 8, 2019 notifying him that his employment had been terminated. (*Id.*, Ex. C.) The letter stated that AST "expect[ed] that [Defendant] will reimburse [AST] in full for its payment of the tuition," which, as of that date, totaled $92,899.09. (*Id.*) The letter attached a spreadsheet listing all of the payments AST previously made to

4

Defendant to cover his tuition.  (*Id.*)  The letter also requested that Defendant return his laptop, cell phone, identification card, and any other AST files or property in his possession.  (*Id.*)

On December 2, 2019, an AST executive emailed Defendant regarding the $92,899.09.  (*Id.*, Ex. D.)  Defendant responded by email, stating he was "unable to pay the amount in full right now," and asking if it would be "possible to work out some sort of payment plan[.]"  (*Id.*)  The AST executive responded, but Defendant did not respond any further.  (*Id.* ¶ 27.)  AST alleges that to date, Defendant has not repaid any money, or returned his laptop, cell phone, or identification card.  (*Id.* ¶ 28.)

Plaintiff brought state law claims in this court against Defendant for breach of contract, unjust enrichment, conversion, and replevin.  (*Id.* ¶¶ 29-47.)  As described above, Defendant has not responded to or otherwise defended against the complaint or the motion for a default judgment.

## Legal Standard

Under Federal Rule of Civil Procedure 55, a plaintiff may obtain a default judgment by following a two-step process.  First, if the defendant "has failed to plead or otherwise defend," the Clerk of Court will enter the defendant's default.

5

Fed. R. Civ. P. 55(a). Second, the plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). Because a default judgment is an extreme remedy, "[d]efault judgments 'are generally disfavored and are reserved for rare occasions.'" *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir.1993)). Before entering a default judgment, the "Court must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722 (PK), 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020) (citations omitted).

## Discussion

First, the court finds that jurisdictional requirements are satisfied here. Plaintiff properly invoked this court's diversity jurisdiction. Plaintiff is a citizen of Delaware and New York, and, as far as Plaintiff is aware, Defendant is a citizen of Connecticut. In addition, the amount

6

in controversy exceeds $75,000, as Plaintiff alleges that Defendant owes it $92,899.09.[1] Second, Plaintiff has taken the necessary procedural steps in pursuing a default judgment, and has provided Defendant with sufficient notice of this action under the Federal Rules of Civil Procedure, as well as sufficient notice of its motion for a default judgment. The primary issue to be decided, then, is whether Plaintiff's allegations establish Defendant's liability as a matter of law with respect to each of Plaintiff's claims.

**I. Breach of Contract**

The Agreement entered by the parties stated that it was to "be construed in accordance with and be governed by the laws of the State of New York[.]" (Am. Compl., Ex. B at 3.) Thus, New York law applies to Plaintiff's breach of contract claim. *See Mem'l Drive Consultants, Inc. v. ONY, Inc.*, 29 F. App'x 56, 62 (2d Cir. 2002) (summary order) (courts generally "refrain[] from rewriting the parties' express choice of law"). "To state a claim for breach of contract under New York law, 'the complaint must allege: (1) the formation of a contract between the parties; (2) performance by the plaintiff; (3) failure of defendant to perform; and (4) damages." *Orlander v.*

---

[1] In addition, the laptop and other items Defendant allegedly converted are also in controversy.

7

*Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir.2011)).

Here, Plaintiff has pleaded sufficient facts, which the court must accept as true, to demonstrate Defendant's liability for breach of contract. Even beyond the facts alleged, Plaintiff has provided documentation demonstrating the existence of a valid contract, which Defendant breached. Plaintiff provided a copy of the written Agreement, signed by an AST executive and Defendant. (*See* Am. Compl., Ex. B at 3.) Plaintiff also provided evidence that it performed its obligations under the Agreement, specifically, correspondence showing the precise dates and amounts of the payments to Defendant to cover his tuition. (*See id.*, Ex. C.) Plaintiff has also sufficiently demonstrated that Defendant breached the Agreement by failing to re-pay those amounts after his employment ended, as Plaintiff supported its allegation with an email from Defendant in which he did not dispute that he owed Defendant the money in question. (*See id.*, Ex. D.) Plaintiff has also established a precise amount of damages by showing that Defendant owed it $92,899.09, the amount AST provided to Defendant under the Agreement.

Accordingly, Plaintiff's motion is granted with respect to the breach of contract claim, and Defendant is liable to Plaintiff for breach of contract.

## II. Unjust Enrichment

Plaintiff's claim for unjust enrichment is based entirely on Defendant's "fail[ure] to reimburse AST for the tuition that it paid on his behalf for the MBA program at New York University." (Am. Compl. ¶ 35.) Thus, Plaintiff's unjust enrichment claim is essentially a duplication of Plaintiff's breach of contract claim. "[W]hen a 'matter is controlled by contract,' the plaintiff has no valid claim for unjust enrichment under New York law." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (quoting *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (2005)); *see Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 485 (E.D.N.Y. 2011) ("Where a valid contract governs the subject matter in a lawsuit, a plaintiff may not recover in quasi-contract, and it is appropriate to dismiss a claim for unjust enrichment.").

Accordingly, Plaintiff's motion is denied with respect to the unjust enrichment claim, and the unjust enrichment claim is dismissed.

## III. Conversion

Plaintiff alleges that Defendant is liable for the conversion of items it provided to him in connection with his employment: a laptop, a cell phone, and an identification card. (Am. Compl. ¶¶ 40-41.) "In a conversion claim, a plaintiff must allege: '(1) the property subject to conversion is a specific

9

identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013) (quoting *Moses v. Martin*, 360 F.Supp.2d 533, 541 (S.D.N.Y.2004)).

Plaintiff has sufficiently alleged all of the necessary elements to demonstrate conversion of the three items Defendant allegedly received in connection with his employment. The three items are each a specific, identifiable object. Plaintiff alleges that it owned or controlled all three items before providing them to Defendant with the understanding that he would return them when his employment ended, but Defendant never did. (*See* Am. Compl. ¶¶ 6, 24-25, 40-41.) The facts alleged must be accepted as true, and on their own, they are sufficient to grant Plaintiff a default judgment. Plaintiff also once again provided evidence to supports its factual allegations: the letter sent to Defendant in November 2019 terminating his employment requested that Defendant "return immediately . . . [his] identification card, laptop, [and] cell phone[.]" (*Id.*, Ex. C at 2.) This letter provides contemporaneous evidence that Defendant indeed had the three

10

items in his possession, and that he had not returned them at that time.

Accordingly, Plaintiff's motion is granted with respect to the conversion claim, and Defendant is liable to Plaintiff for conversion of the laptop, cell phone, and identification card that were provided by AST in connection with his employment.

**IV.  Replevin**

Plaintiff's claim for replevin is likewise premised on Defendant's failure to return the laptop, cell phone, and identification card.  (Am. Compl. ¶¶ 44-47.)  "To establish a claim for replevin, the plaintiff must prove two elements: (1) that plaintiff has a possessory right superior to that of the defendant; and (2) that plaintiff is entitled to the immediate possession of that property."  *Jamison Bus. Sys., Inc. v. Unique Software Support Corp.*, No. 02-cv-4887 (ETB), 2005 WL 1262095, at *14 (E.D.N.Y. May 26, 2005).  For the same reasons as those discussed above in the context of Plaintiff's claim for conversion, Plaintiff has sufficiently pleaded facts establishing that its rights to the three items were superior to Defendant's rights, and that Plaintiff is entitled to the return of the three items.  Accordingly, Plaintiff's motion is likewise granted with respect to the replevin claim.

The difference between a claim for replevin and a claim for conversion is that "[i]n the former the plaintiff elects to have his property back; . . . [o]n the other hand, in an action for conversion a plaintiff makes 'a kind of forced sale,'" and the plaintiff is then entitled to the proceeds of that sale. *Satterwhite v. Harriman Nat. Bank & Tr. Co.*, 13 F. Supp. 493, 499–500 (S.D.N.Y. 1935) (quoting *Allen v. Fox*, 51 N.Y. 562, 564 (N.Y. 1873)). Here, because Plaintiff has established Defendant's liability for both conversion and replevin, either remedy would be available. Plaintiff does not seek a forced sale, however, and has only requested the return of its property. (*See* Am. Compl. at 9; Mem. at 10.)

**V. Remedies**

On the breach of contract claim, Defendant is liable to Plaintiff in the amount of $92,899.09 in damages, which is the amount Defendant was obligated to pay back to Plaintiff under the terms of the Agreement. Plaintiff does not seek a forced sale of the three items converted by Defendant, and instead seeks only the immediate return of those items, which it is entitled to on its claim for replevin.

Plaintiff also seeks prejudgment and post-judgment interest. In a breach of contract case under New York law, prejudgment interest is awarded on a simple interest basis at a rate of nine percent from the date of Defendant's breach. *See*

*Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) ("[I]n a breach of contract action of this sort, we hold that under New York law the district court should have awarded prejudgment interest calculated at the simple statutory rate of nine percent."). The Agreement required Defendant "to reimburse [AST] in full for payment of the Tuition by no later than one week after the termination of [his] employment." (Agreement ¶ 7.) Defendant's employment was terminated by letter on November 8, 2019 (Am. Compl., Ex. C), and thus the reimbursement was due one week later, on November 15, 2019. Accordingly, Defendant was in breach of the Agreement for failing to pay back the money beginning on November 16, 2019. Prejudgment interest therefore should be calculated at a rate of nine percent from November 16, 2019 through the date of this Memorandum and Order. Interest over that period on $92,899.09 at a rate of nine percent amounts to $9,345.90.

In addition, Plaintiff is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961, and costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

## Conclusion

For the foregoing reasons, Plaintiff's motion for a default judgment is GRANTED. The Clerk of Court is directed to enter judgment against Defendant in the amounts of $92,899.09 in damages and $9,345.90 in prejudgment interest. Interest shall

13

accrue upon the unpaid judgment from the date of entry as provided by law.  28 U.S.C. § 1961.  Defendant must promptly return to AST the laptop, cell phone, and identification card, and any other files, documents, or objects that should have been returned when his employment ended.

**SO ORDERED.**

Dated:   Brooklyn, New York
         December 28, 2020

/s/
Hon. Kiyo A. Matsumoto
United States District Judge